And we will move on to case number four of the day, which is appeal number 21-1500, United States v. Guillermo Patlan. Ms. Brown. Hello, Ms. Brown. Hello, Your Honors. Hello. If it please the court and counsel, Lizana Brown on behalf of the defendant appellant, Guillermo Patlan. Your Honors, this case involves an appeal of a sentence imposed on supervised release revocation. The sentence imposed was 18 months of imprisonment with a six-month term of home confinement, and the appeal itself is twofold. First, the error arises in that the district court believed itself bound by this court's ruling in United States v. Trotter to treat any and all failed drug screens  and therefore in the state of Illinois, elevating that offense to a grade B violation rather than grade C. Ms. Brown, I'm going to stop you right there because where in the record is there any indication that the judge thought that Trotter required her to infer possession from a single failed drug screen? Isn't it a more natural reading of the record to find that she accepted Patlan's admission of possession and once possession was admitted, Trotter then required her to categorize this as a grade B violation? I do understand Your Honors' interpretation. However, the district judge did adopt all of the government's reasoning in its argument that Trotter had bound the court to apply this as a grade B violation. And if Your Honor will permit me some latitude, it should not matter whether a defendant has admitted facts arising to a grade B violation or not. Our precedent, including Kimbrough, Spears, Booker, and its progeny, allows district courts the ability to disregard or vary from any guideline provision based on policy reasoning. Of course. Of course, counsel. And these are policy statements even before Booker. These were only advisory. But in terms of simply classifying correctly, given, as you say in your own brief, that he stipulated to possession, I don't see why this interesting debate about whether the inference is permissible or is required makes a difference in this case. The question, Your Honor, has been phrased and was phrased in the sentencing commentary as a sentencing argument. Whether or not the judge, regardless of whether a defendant pleads guilty or accepts guilt or admits to certain facts, has the ability to nonetheless treat that conduct differently under the guidelines. And I believe, Your Honor, that Kimbrough and Korner and Price in this court's decision in Knox all support that premise. The defendants in both Kimbrough and Knox and Korner and Price were all found guilty of that conduct supporting those guideline enhancements and amendments. Specifically, Kimbrough and Knox pled guilty to crack cocaine offenses, yet district courts have discretion to disregard the 100 to 1 ratio. Of course they do. Of course they do. But that doesn't change the calculation. All right. Okay. Go ahead. I'll listen to what you have to say. Certainly, yes, Your Honor. Specifically, our argument is, Your Honor, that a district court should have the discretion to disregard any guideline, regardless of whether a defendant admits to facts supporting that guideline or not, either in a departure or a policy disagreement or in a variance context. And that the district court in adopting the government's reasoning in this matter that it was bound to follow Trotter and treat that violation as a grade B violation was implicitly adopting the view that it did not have discretion to treat it as a grade C violation, either at the fact-finding or at the sentencing phase. Now, that could, of course, have a chilling effect on defendants because that is to say that a defendant should be less than truthful with the district court and should dispute the allegations in a revocation and have a hearing, needlessly, expending judicial resources, just so that it could preserve this argument that a grade C violation should instead apply. Now, declining to infer possession from a failed drug screen would be the exception, not the rule, right? Of course. And, Your Honor, the facts of this case supported that particular exception. We were dealing with just a single failed drug screen. Well, I mean, is your claim, oh, well, he only did it once, so let's just look the other way? Absolutely not, Your Honor. The guideline range for a grade B violation was 18 to 24 months, and the guideline range for grade C was 7 to 13 months in this case. And we were indeed asking for the top of that guideline range 13 months. But the issue becomes, did the district judge believe that it did not have discretion to do so? And, Your Honor, this court's decisions in both Redmond and Baca-Baca indicate that where the record is not made clear as to whether a district court believed itself to have that full discretion, that a limited remand is warranted. I fear that, to me, it appears that the judge was well aware of the discretion to sentence him if this were a grade C violation. I mean, even announcing on the record that she wasn't bound by the guidelines range, she simply declined to do so after analyzing the Section 3553A factors. Your Honor is correct, and I would like to draw one distinction between the court's ruling on the Trotter issue and its generic advisory nature of the guideline statement later upon in sentencing. The court's admission that it had just read Trotter one more time, and this is on page 66 of the appellate brief at line 5 to 6, it did acknowledge that it read Trotter one more time and was still of the opinion that the government was correct in all of its points, meaning that Trotter was binding and the court had to find that it be a grade B violation. This court's ruling in Baca-Baca says that any announcement of an outside constraint, despite that generic statement. Can I ask you a question, Ms. Brown? Yes. There's a difference between saying what the guideline calculation is and saying what consequence that will have, right? I mean, this is an admitted grade B violation, and the judge is free to treat it any way she wants. That's correct, Your Honor. Okay, that's the law even before Booker. Can I ask you about your argument on the home confinement condition? Please, Your Honor. So as you're aware, after a series of decisions like Thompson and Kappas in which this court, in essence, chose not to enforce ordinary appellate review standards about supervised release conditions, we did finally get back to normal in a series of cases such as Lewis and finally with Flores and the 40E circulation that occurred with that case to establish clear guidelines for waiver. And that appears to have been successful in directing challenges to supervised release conditions to the district courts in the first instance. I understand your argument to be, now that we ought to go back to the old days of 2015 or 2016 or so and start making waiver a sliding scale, that if the condition is burdensome enough that a different set of requirements are necessary to establish waiver on those procedural requirements. Is that right? Somewhat, yes, Your Honor. Why should we do that? This court's rulings in Flores and Anderson both stated that the nature of the right at issue necessarily varies the inquiry. With this particular issue, we're dealing with six months of home confinement, ultimately an alternative to incarceration, rendering his 18-month sentence, in fact, a 24-month sentence. That these conditions here have such a significant deprivation of liberty that they differ so greatly from those conditions that were at issue in both Flores and Anderson. Anderson involved a restriction on going to bars and pubs. Flores involved a restriction on employment. It did not involve the same significant deprivation of liberty, our most fundamental right, that the analysis requires something more and that at most, Your Honor, that the issue was forfeit and not waived, or may I correct the matter, I forfeit the issue on behalf of the defendant. In particular, the defendant raised no objections at all to any of the proposed conditions of supervision, and the government may propose that because we raised one objection on the trotter issue, that that therein should of itself indicate some intentional relinquishment or abandonment of that right. But that should not suffice under these circumstances, Your Honor. There was no mention whatsoever on the record, oral, written, or otherwise, as to the six months of home confinement, except for 61 days. It was in writing, right? And the defendant initialed each one, right? Correct, Your Honor, in the proposed conditions of release. Every box for waiver was checked here, right? That's correct, Your Honor, and I will have to admit error on that. May I finish? So why not fix this by simply going back to Judge Myerscough? We did attempt that, Your Honor, with a motion to correct the judgment. It was responded that there was no correction required, which is why this appeal was... Oh, did you invoke, was it 3583A, or E rather? Is that the provision that says basically you can go back and seek modification at any time? Oh, we did not, Your Honor. It was time for his direct appeal. We had the Trotter issue to raise as well, and that, of course, is... But there's nothing that would foreclose you from bringing a 3583E motion at any time, correct? Of course, Your Honor. May I just point out as well that on the oral record in this matter, the only mention of home confinement was 61 days of unserved home confinement, which conflicts with the written judgment of six months of home confinement. That in of itself should warrant reversal. And if Your Honors have no further questions. Thank you. Thank you. I'll give you a few minutes for rebuttal. I appreciate that, Your Honor. Thank you. Yeah. Okay. Mr. Kinstra. Hi, Mr. Kinstra. Good morning, Your Honor, and may it please the Court. My name is Jeff Kinstra, and I represent the United States. District courts have the discretion to disagree with and vary from the guidelines range or policy statement, but first they have to correctly calculate it. And as Your Honors have noted this morning, those are two distinct steps of a sentencing or revocation hearing. Now, here, calculating the correct policy statement range was easy because the defendant admitted possession. The defendant... I'm sorry, the district court didn't have to draw any inference of possession from use. He was alleged to have committed a new crime by possessing amphetamine and methamphetamine, and he admitted to the violation as alleged. So the district court didn't draw any inferences, simply accepted his admission. And from there, calculating the correct policy statement range was mechanical. As a matter of both state and federal law, his possession of those substances was a felony offense, and under the guidelines, a felony offense is a Grade B violation. From there, the district court acknowledged its authority and discretion to disagree with the guidelines range and vary. As you noted, Judge Roebner began its sentencing explanation by noting that the policy statement was only advisory, not mandatory. As Ms. Brown noted, the court also agreed with the government's prior arguments where the government had repeatedly argued and noted that the court had the discretion to vary from the policy statement range after correctly calculating it. The government noted that finding it to be a Grade B violation doesn't bind the court in terms of what the actual sentence is that the court feels is appropriate, that the court could find that the defendant's recommendation is the acceptable sentence. The court has the discretion to do that. But the first step was to find that it was a Grade B violation. That's a matter of law based on the defendant's admission. So the court committed no error as to its sentencing discretion in that respect. As to the conditions of home confinement, as Your Honor noted, Judge Hamilton, this is a very clear case of waiver under Flores and this court's recent waiver doctrine. Yes, but you know, Mr. Kinstra, it is troubling that the court did not give any reason for imposing home confinement. If Mr. Patlin had preserved his objections to the conditions of supervised release, would you agree that we would have to send that back? Or, you know, are you arguing that we consider, that we can consider the reasons previously given for imposing home confinement during the first period of supervised release? So on the merits of that issue, which is of course a merits question, not a waiver question, our argument is that the court explained at length why the sentence that it imposed was appropriate under the 3553 factors. And although it did that most directly in the context of explaining the term of imprisonment, that that explanation applied equally to the term of home detention. But as this court has held in Lewis and other opinions, that the adequacy of an explanation is a merits question. And that it doesn't warrant an exception from waiver. That would be a reason to object in the district court if the defendant thought the objection was lacking. And practically speaking, if the defendant had preserved his objection, that would have meant that he would have asked the court for an explanation, and then the court would have provided it. So I think in either event, we still wouldn't be here. What's your answer to Ms. Brown's point about the difference between the court's oral pronouncement and its written ruling judgment? I think there is no variance. That the court expressly said on the record that I'm adopting all of the conditions that it proposed. And it in fact adopted all of those in the judgment. So it did say on the record, I am adopting all those conditions. The court had in advance issued the notice, so everyone knew as they sat there in the hearing exactly what those conditions were. And so when the court said, I'm adopting all of them, the defendant was on notice and had the ability to object. So you're saying there was no moment where the court said 61 days of home confinement? So the term of home confinement that the court imposed was six months. And that was the term that was proposed in its written notice before the hearing. So as Judge Hamilton mentioned, the court issued a notice that included, I think, 17 conditions. The defendant went through and initialed every single one of them. And then at the hearing, the court said, I'm adopting all of those conditions in that notice. So the defendant had notice of that. He had initialed them. He confirmed on the record that he had read all of them and reviewed them with his attorney. And those were the conditions that the court adopted at the hearing on the record. The 61 days was an unserved portion of a previous term. And so the court said that it wasn't adding those 61 days to the term of imprisonment. So that's where the 61 days came from. I guess a couple of final notes on waiver. The defendant argues that essentially home detention is unwaivable because it's comparable to imprisonment. And the simple reason we know that can't be true is that even objections that go to terms of imprisonment are waivable. The objection here is primarily to the adequacy explanation. And even that can be waived to a term of imprisonment, as can objections to guidelines ranges, which can affect terms of imprisonment. Issues that go to guilts, like with jury instructions and evidence, can be waived as well. So there's nothing exceptional about home detention that warrants an exception to this court's well-settled waiver doctrine. And last, ineffective assistance or an argument that is just purely accidental and not strategic. This court has repeatedly held it as well as not a ground for an exception. The defendant has the ability to move for a modification of the conditions at any time. So that's his alternative. Unless your honors have any further questions, the government would rest on its brief and ask this court to refer. Thank you very much, Mr. Kingsgrove. Thank you. Kay? Thank you, Your Honor. With respect to the Trotter issue, Your Honor, I understand the court's distinction between making an inference at the fact-finding phase and sentencing arguments at the sentencing phase. However, the practical effect of the court's limitation on a district judge's ability to make that inference or not under Trotter, if a defendant pleads guilty and accepts guilt or accepts those facts, the practical effect of that is that criminal defendants will have to falsely deny that they failed a drug test or that they used drugs solely in order to raise an objection that the Trotter inference should not apply under those circumstances. If it's a false denial, then it should apply. But if it's a true denial, then they can make that argument. Could I ask you, Ms. Brown, at the close of your opening presentation, you asserted what sounds to me like a brand-new argument for reversing a variance between oral and written sentence. Is that something that I overlooked in your brief? It is not, Your Honor. It is not a literal inconsistency between the oral pronouncement and the written judgment. There was just no mention of the six months of home confinement whatsoever on the record. Except the adoption of the stated conditions, right? Correct, Your Honor, with the exception of the stated proposed conditions. The 61 days of home confinement was made part of the sentence of 18 months of imprisonment, which the judge said included 61 days of unserved home confinement on two occasions, at page 15 of the appellate's appendix and page 27. Those were the only mention of home confinement on the record. And because there was not an obvious and clear inconsistency, I did not raise that as a separate appellate issue. But nonetheless, it is present. Thank you. Thank you. Any last words? No, Your Honors. Thank you. Well, thank you very much. And the case will be taken under advisement. Thank you.